STATE OF HAWAII, Plaintiff–Appellee, v. **GORDON ABRAHAM GASPAR**, also known as Gordy, Defendant–Appellant, and **GILBERT JOSEPH REID**, Defendant

NO. 14180

STATE OF HAWAII, Plaintiff–Appellee, v. **GILBERT JOSEPH REID**, Defendant–Appellant, and **GORDON ABRAHAM GASPAR**, also known as Gordy, Defendant

NO. 14143

(CR. NO. 88–0313)

NOVEMBER 27, 1990

BURNS, C.J., HEEN, AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

Defendant Gordon Abraham Gaspar (Gaspar) appeals the October 12, 1989 judgment upon a jury verdict convicting him of two counts of promoting a dangerous drug in the first degree, Hawaii Revised Statutes (HRS) § 712–1241(1)(b)(ii)(A) (1985),[1] and one count of resisting arrest, HRS § 710–1026(1)(a) (1985).[2] We vacate the October 12, 1989 judgment convicting Gaspar of two counts of promoting a dangerous drug in the first degree and remand for a new trial of those counts. We affirm the judgment convicting Gaspar of resisting arrest.

---

[1] At the time Gaspar was charged, Hawaii Revised Statutes (HRS) § 712–1241(1)(b)(ii)(A) (1985) provided:

(1) A person commits the offense of promoting a dangerous drug in the first degree if he knowingly:

* * *

(b) Distributes:

* * *

(ii) One or more preparations, compounds, mixtures, or substances of an aggregate weight of:

(A) One–eighth ounce or more, containing heroin, morphine, or cocaine or any of their respective salts[.]

HRS § 712–1241(1)(b)(ii)(A) was amended effective June 1, 1988 by Act 146, § 1, 1988 Haw. Sess. Laws 246, 246–47.

[2] HRS § 710–1026(1)(a) provides: "A person commits the offense of resisting arrest if he intentionally prevents a peace officer acting under color of his official authority from effecting an arrest by:

(a) Using or threatening to use physical force against the peace officer or another[.]"

Defendant Gilbert Joseph Reid (Reid) appeals the October 12, 1989 judgment upon the same jury's verdict convicting him of one count of promoting a dangerous drug in the first degree and one count of promoting a dangerous drug in the second degree, HRS § 712–1242(1)(b)(i) (1985).[3] We affirm the October 12, 1989 judgment convicting Reid of one count of promoting a dangerous drug in the first degree and one count of promoting a dangerous drug in the second degree.

## FACTS

On November 24, 1987 Reid's acquaintance, who was assisting the government, and government agent Daniel Moore (Moore) went to Reid's residence. Reid's acquaintance told Reid that Moore was the brother of a person known to Reid. Moore asked Reid to sell him a gram of cocaine. Reid replied that he did not have any on hand but would telephone a friend. After using the phone, Reid advised Moore that he was unsuccessful. Reid agreed to Moore's request that he try again in half an hour. Reid's second try was likewise unsuccessful. Moore asked Reid if he could get some cocaine later. Reid told Moore he could get some the next day, then gave Moore his telephone number.

When Moore telephoned Reid the next morning, Reid advised Moore that Reid could arrange for half an ounce of cocaine for

---

[3] At the time Reid was charged, HRS § 712–1242(1)(b)(i) (1985) provided:

(1)  A person commits the offense of promoting a dangerous drug in the second degree if he knowingly:

\* \* \*

   (b)  Possesses one or more preparations, compounds, mixtures, or substances of an aggregate weight of:

      (i)  One–eighth ounce or more, containing heroin, morphine, or cocaine or any of their respective salts[.]

HRS § 712–1242(1)(b)(i) was amended effective June 13, 1988 by Act 291, § 1, 1988 Haw. Sess. Laws 538.

$1,200.00. That evening Moore drove to Reid's residence. Reid got into Moore's car and Moore drove for half an hour to Swanzy Beach Park in Kaaawa. Reid told Moore to stop in the 7–Eleven parking lot. Reid exited Moore's car and met with someone in another car parked nearby. When Reid returned, he told Moore that his source wanted to make the deal elsewhere. Reid suggested that Moore drive toward Kahuku and park off the road. Moore drove a mile to a mile–and–a–half toward Kahuku and parked off the road. The other car parked behind Moore's car. Reid asked Moore to give him the money. Moore showed Reid the money but declined to give it to him absent the cocaine. While Reid went to and entered the other car, Moore remained seated in his car. Reid and Gaspar got out of the other car and approached Moore. Reid walked all the way to Moore. Gaspar stopped short. Gaspar handed Reid an envelope and Reid handed it to Moore. The envelope contained a glassine heat–sealed packet containing 14.0235 grams of cocaine. Moore then gave Reid $1,200.00 which Reid gave to Gaspar. Reid entered Moore's car and Moore drove away.

During the trip back to Reid's residence, Reid produced a marijuana cigarette and told Moore that Gaspar had given it to Reid. When Moore asked Reid if Gaspar could supply more and larger quantities of cocaine, Reid replied that he would check into it.

During the first or second week of December 1987, Moore telephoned Reid and asked for more cocaine. Reid informed Moore that Gaspar was on the Big Island and would not be back until after the Christmas holidays. Moore telephoned Reid on January 12, 13, 18, and 19, 1988. The conversations were taped and introduced into evidence.

On January 19, 1988 Moore again drove Reid to Swanzy Beach Park in Kaaawa. Moore parked in its parking lot. When Reid saw Gaspar standing near the bathroom, Reid asked Moore to give him the money. In the absence of the cocaine, Moore

declined. Reid went and talked to Gaspar. Reid came back and told Moore that Gaspar did not want to deal directly with Moore. Moore gave Reid $2,100.00. Reid followed Gaspar into the bathroom out of Moore's sight. When Reid returned from the bathroom, he gave Moore an envelope containing a glassine heat–sealed plastic container containing 27.9860 grams of cocaine. Moore then drove Reid home.

Moore telephoned Reid on January 25, 26, and 27, 1988. The conversations were taped and introduced into evidence.

On February 4, 1988 Moore drove Reid to a 7–Eleven store in Waimanalo. Reid asked Moore for the money to give to "Gordon." In the absence of the cocaine, Moore declined. Reid went behind the store and, upon his return, advised Moore that Gordon declined to appear and that Moore would have to give the money to Reid. Upon Moore's demand, Reid exited Moore's car and Moore drove away.

Reid and Gaspar were arrested on February 4, 1988 while sitting alongside the highway near the Waimanalo 7–Eleven store. Gaspar tried to flee but was subdued.

Count I charged Reid and Gaspar with promoting a dangerous drug in the first degree on or about November 25, 1987; Count II charged both of them with promoting a dangerous drug in the first degree on or about January 19, 1988; and Count III charged Gaspar with resisting arrest on or about February 4, 1988.

On February 5, 1988 Reid gave a written statement to the State. At the trial, Reid's statement was partially blacked out to exclude references to Gaspar and received in evidence as Defendant Gaspar's Exhibit A. It reads as follows:

> Sometime around Thanksgiving Mike Cruto introduced me to this Guy Dan. We were at my house and he asked me if I could get him 1/2 gram or a gram of Coke and I couldn't get him any. So I gave him my number and he called me and asked me if I could get him any cocaine

and I told him I could get him 1/2 ounce. [Portion blacked out.] Dan picked me up in his car and I rode there with him. [Portion blacked out.] I gave to Dan. Dan checked it out but I never actually saw the cocaine. Dan called a couple times after that and then after Christmas I told Dan I could get him some more. [Portion blacked out.] Tonight Dan had told me he wanted two ounces. [Portion blacked out.] Dan told me he was sending the dope to Japan. About 7 o'clock tonight Dan picked me up and we drove straight to Waimanalo. I gave Dan directions and took him through Kailua to Waimanalo. I gave Dan directions and took him through Kailua to Waimanalo because that was the only way I knew how to get there. We drove to the 7–11. [Portion blacked out.] Dan to forget it and he drove away. [Portion blacked out.]

On October 24, 1988 Gaspar moved for a separate trial from Reid on the grounds that (1) his constitutional right of confrontation would be violated if Reid's inculpatory statements were admitted in evidence and (2) the gross disparity of proof against him and Reid would deny him his constitutional rights to due process and a fair trial. The lower court denied the motion.

Prior to the commencement of the jury trial on August 21, 1989, both Reid and Gaspar moved for separate trials. Both argued that a joint trial would cause both of them not to testify because their defenses were inconsistent and the testimony of one would compel the other to respond in contradiction. The lower court denied the motions.

In his opening statement, Reid asserted the defense of entrapment.[4] His counsel outlined his entrapment defense as follows:

---

[4] According to the lower court's jury instructions, Reid's entrapment defense required proof that (1) he was induced or encouraged to commit the crimes by a law enforcement officer and (2) the methods of persuasion or inducement em-

As the evidence will show, that my client was a person who had the lax attitude towards cocaine. He personally used it, occasionally. He felt that he was doing the guy a favor by introducing him to a person who did distribute cocaine. What the evidence will show is that under the law, he should not be found guilty of the distribution of cocaine because he was not the distributor but merely a person who knew someone and who was being asked to participate or being induced to participate by law enforcement. Thank you very much.

Transcript, August 21, 1989, at 15.

In his opening statement, Gaspar asserted the defense of insufficiency of evidence to prove him guilty of the charges against him. His counsel outlined his defense as follows:

I just want you to realize that the evidence will show that my client, Mr. Gaspar, was primarily implicated because of circumstances. You will see through the evidence that Mr. Gaspar had always hung around Swanzy Beach Park. That's where he always was and, in fact, on the day in question, where there was allegedly a transaction at Swanzy Beach Park, my client was there with his wife to watch a hula show and in fact it was his wife that suggested that they go watch the hula show.

Also, you will find out, through the evidence, that Mr. Reid knew Mr. Gaspar from the beach and that they had seen each other on a number of occasions, prior to any of these incidences at the beach park so seeing them together was nothing out of the ordinary.

Also, you will see from the second transaction that nobody had ever seen Mr. Gaspar give any cocaine to Mr.

---

ployed created a substantial risk that the offenses would be committed by a person other than a person ready to commit it.

Reid. Only that they had talked with each other at the beach and nothing more than that. Also, you will see from the evidence that there was no cocaine found on Mr. Gaspar.

At the time [of] his arrest, when allegedly this big transaction was going to occur, there was no cocaine found on Mr. Gaspar. Also, you will hear from the evidence that there was no cocaine even found at Mr. Gaspar's house and you will see, from the evidence, that [the] case against Mr. Gaspar is primarily circumstantial and implicated through the circumstances. Thank you.

Transcript, August 21, 1989, at 15–16.

During the trial, neither Reid nor Gaspar called any witnesses or testified.

Ann Kent, the agent for the Narcotics Enforcement Division, Attorney General's Office, testified as follows:

[PROSECUTING ATTORNEY:] Agent Kent, what did defendant Reid tell you on that evening on February 4th, 1988?

A   He indicated that he had met an individual named Dan who had asked him if he could get him some cocaine. And that he had tried on one occasion to get him cocaine and had been unable to do so but had told him that he could get it for him later. And that a day later or so, right around Thanksgiving, that he had made arrangements to get the cocaine for the individual. They went together to get the cocaine. He was given money by Dan and Dan—and he then gave Dan the cocaine. On one occasion he indicated that he had gotten a roach himself.

Then sometime after Christmas there was another opportunity to sell cocaine or Dan requested cocaine on another occasion, and he indicated to Dan that he could get cocaine for him again. On this occasion he again

received the money from Dan and he gave him cocaine. Except on this occasion he took a hundred dollars from the money for himself before—well, he took a hundred dollars of the money that Dan gave him for himself and then gave Dan the cocaine.

Immediately after Ann Kent testified, the court upon Gaspar's request instructed the jury as follows:

At this point during the trial I've been requested, ladies and gentlemen, to give you a cautionary instruction. Now, you've heard the witness testify that defendant Gilbert Reid made a statement to the witness about his version of what occurred. This statement can be used— only can be used against defendant Reid. You are not to infer in any way that in these statements Gordon Gaspar is implicated or accused.

Transcript, August 23, 1989, at 45–47.

After the State rested, but before the defense rested, Reid's counsel repeated his request for a separate trial from Gaspar, arguing as follows:

[I]f my client takes the stand, he would obviously have to implicate defendant Gaspar, and that would almost force the defendant Gaspar to take the stand and refute a lot of what my client said. In other words, it would create really havoc with the defense of entrapment. That I believe my client has the right to make a complete defense of entrapment without the burden of having not to offend the co–defendant because he's got an inconsistent defense.

Transcript, August 23, 1989, at 83.

Similarly, Gaspar's counsel repeated his request, arguing as follows:

[My client] knows that, if he takes the stand, then he is forcing defendant Reid to take the stand and, in essence, rebuttal to what my client may say. And it gets

into a situation where, if he does not—he would not take the stand only if defendant Reid did not take the stand simply because he did not want to open the door to anything. However, if defendant Reid had taken the stand, the door would have been opened and it would have been a matter that my client would have to refute what defendant Reid had to say as well as what the State's witnesses had said. And that's what created the dilemma.

Transcript, August 23, 1989, at 84. The lower court denied the motions.

At the end of the trial, the jury was instructed as follows: "You have heard a witness testify that Defendant Gilbert Reid made a statement to the witness about his version of what occurred. This statement can only be used against Defendant Reid." Transcript, August 29, 1989, at 20.

With respect to Count I involving the November 25, 1988 transaction, the jury found Reid guilty of the lesser included offense of promoting a dangerous drug in the second degree.

## DISCUSSION

Both Reid and Gaspar contend that the lower court reversibly erred when it denied their Hawaii Rules of Penal Procedure (HRPP) Rule 14 motions to sever their trials. We agree in part as to Gaspar, but disagree entirely as to Reid.

HRPP Rule 8(b) states:

(b) **Joinder of Defendants.** Two or more defendants may be joined in the same charge:

(1) when each of the defendants is charged with accountability for each offense included in the charge;

(2) when each of the defendants is charged with conspiracy and some of the defendants are also charged

with one or more offenses alleged to be in furtherance of
the conspiracy; or

(3)   when, even if conspiracy is not charged and all
of the defendants are not charged in each count, the sev-
eral offenses charged:

    (i)   were part of a common scheme or plan; or

    (ii)  were so closely connected in respect to
time, place and occasion that it would be
difficult to separate proof of one charge
from proof of the others.

HRPP Rule 14 states: "If it appears that a defendant or the
government is prejudiced by a joinder of offenses or of defendants
in a charge or by such joinder for trial together, the court may order
an election or separate trials of counts, grant a severance of defen-
dants or provide whatever other relief justice requires."

In *State v. White*, 5 Haw. App. 670, 672, 706 P.2d 1331, 1333
(1985), we stated:

In our view, after the defendant has been adjudicated
guilty, the appellate court may not conclude that the
defendant suffered prejudice from a joint trial and, there-
fore, that the trial court abused its discretion in denying
defendant's motion for severance unless it first concludes
that a defendant was denied a fair trial. What might have
happened had the motion for severance been granted is
irrelevant speculation.

Three possible causes of an unfair trial are relevant to the facts
of this case. A joint trial may have been unfair to one defendant
when (1) the core of each defense was in irreconcilable conflict
with the other and there was a significant danger, as both defenses
were portrayed in the trial, that the conflict alone led the jury to
infer the defendant's guilt, *People v. Mahboubian*, 74 N.Y.2d 174,
543 N.E.2d 34, 544 N.Y.S.2d 769 (1989); (2) the joint trial pre-
vented the defendant in question from introducing evidence that

would have been admissible in his separate trial not involving the other defendant, *State v. White*, 5 Haw. App. at 672, 706 P.2d at 1333; or (3) the joint trial allowed the admission of evidence damaging to the defendant in question that would not have been admissible in his separate trial not involving the other defendant. *Id.*

### 1.

As noted above, Reid's defense was that he would not have engaged in the criminal activity if the State had not entrapped him to do so. Gaspar's defense was that the State did not have sufficient evidence to prove him guilty beyond a reasonable doubt. Since Reid and Gaspar did not testify and the jury could have reasonably concluded both that Reid was entrapped and that the State had not met its burden of proof against Gaspar, we conclude that the core of each defense was not in irreconcilable conflict with the other.

### 2.

Reid contends that he did not testify because his testimony would have implicated Gaspar and Gaspar would have retaliated by testifying and rebutting much of Reid's testimony. Gaspar contends that he did not testify because his testimony would have implicated Reid and Reid would have retaliated by testifying and incriminating Gaspar "far greater than any evidence offered by the State."

This case proves the wisdom of our rule in *State v. White* that speculation about what might have happened had a motion for severance been granted is irrelevant. The only relevant facts are what actually happened. The question is whether the joint trial prevented Reid or Gaspar from presenting their evidence. The answer is no. Neither was prevented from presenting his evidence.

3.

Gaspar contends that (a) Moore's testimony that Reid said that the marijuana cigarette was given to him by Gaspar and (b) the tapes of the telephone conversations between Moore and Reid wherein Reid's cocaine source was identified as being Reid's "friend" and by the names "Gordon" and "Gordy" would not have been admissible at his separate trial. We agree. The question is whether the introduction of this evidence denied Gaspar a fair trial notwithstanding the jury instruction that it could be used only against Reid and not against Gaspar. Under the circumstances of this case, we conclude that it did with respect to Counts I and II, alleging the drug promotion offenses, but that it did not with respect to Count III, alleging the resisting arrest offense.

## CONCLUSION

Accordingly, we vacate the October 12, 1989 judgment convicting Gaspar of two counts of promoting a dangerous drug in the first degree and remand for a new trial of those counts. We affirm the October 12, 1989 judgment convicting Gaspar of one count of resisting arrest.

We affirm the October 12, 1989 judgment convicting Reid of one count of promoting a dangerous drug in the second degree and one count of promoting a dangerous drug in the first degree.

*Martin A. Steinberg* for defendant–appellant Gordon Abraham Gaspar.

*Ignacio R. Garcia* (*Lani Rae Suiso Garcia* with him on the brief) for defendant–appellant Gilbert Joseph Reid.

*James H. S. Choi*, Deputy Prosecuting Attorney, for plaintiff–appellee.