**STATE OF HAWAII**, Plaintiff–Appellee, v. **EFREN RENON**, Defendant–Appellant

NO. 14876

**STATE OF HAWAII**, Plaintiff–Appellee, v. **RENATO PAET**, Defendant–Appellant

NO. 14841

(CR. NO. 89–1058)

MARCH 18, 1992

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, AND MOON, JJ.

OPINION OF THE COURT BY MOON, J.

Defendants–appellants Efren Renon (Renon) and Renato Paet (Paet) (collectively "defendants") separately appeal their

convictions and sentences following a joint trial in the Circuit Court of the First Circuit.[1] Renon was found guilty of Attempted Murder in the First Degree, in violation of Hawaii Revised Statutes (HRS) §§ 705–500 and 707–701(1)(a); Murder in the Second Degree, in violation of HRS § 707–701.5(1); and Carrying a Firearm on Person Without License, in violation of HRS § 143–9. Paet was found guilty of the offense of Accomplice to Murder in the Second Degree, in violation of HRS §§ 702–221(2)(c), 702–222(1)(b), and 707–701.5(1).

On appeal, Renon alone contends that the trial court erred in joining both Paet and him with two other defendants in a single trial that involved separate incidents. Both Renon and Paet assert that the trial court abused its discretion in allowing evidence of a prior shooting to be presented to the jury because that evidence was more prejudicial than probative. Based on our review of the record, we conclude that the trial court did not abuse its discretion in ordering a joint trial or in admitting the evidence of the prior shooting.

## I. FACTS

The charges against defendants arose out of a shooting incident that occurred on September 19, 1989 in the parking lot of Farrington High School, which resulted in the death of Gilbert Asuncion (Asuncion). During the incident, shots were also fired at Kennedy Manuel (Manuel); however, he was not injured. Escalating hostilities between two rival youth gangs, the Hawaii Brothers and the Judas, was allegedly the reason for the shooting. Defen-

---

[1] Although not consolidated, both appeals arise out of the same incident and raise essentially the same issue. For these reasons, the appeals will be considered together.

dants are members of the Hawaii Brothers gang and Asuncion and Manuel are Judas gang members.

The prior shooting incident, which defendants contend should not have been presented to the jury, occurred twenty-four hours before the Farrington shooting. On that day, September 18, 1989, several members of the Judas gang, including Asuncion, were playing basketball at Mokauea Mini Park in Kalihi. Paet and other Hawaii Brothers gang members, including Ireneo Masulit (Masulit) and Frederick Alvarez (Alvarez), drove by the Mini Park. Masulit, who was sitting in the back of a truck driven by Alvarez, fired a shot at a Judas gang member who was in the park. Masulit's shot missed the gang member, but hit and wounded an elderly woman.

The evidence presented at trial indicated that on September 19, 1989, Paet drove Renon, Alvarez, and his (Paet's) girlfriend to Farrington to pick up Masulit's girlfriend. As they entered the high school parking lot, Renon asked where the gun was located. Renon, Alvarez, and Paet looked for and talked about the gun. Paet indicated that the gun was under the seat. Renon retrieved the gun and placed it in the waistband of his pants, while Paet parked the car in a dirt area near the parking lot exit. Masulit's girlfriend arrived, but she and Paet's girlfriend left the area because Renon indicated that there was going to be trouble.

Meanwhile, two cars containing Judas gang members had entered the parking lot. Asuncion and Manuel were riding in the second car. The two cars drove around the lot and stopped approximately ten to fifteen feet away from Paet's car because of traffic. Witnesses testified that Renon walked up to the second car, pulled his hands out from under his shirt, and shot Asuncion in the head. Manuel jumped out from the front passenger seat and struck Renon's hands with a pipe in an attempt to dislodge the gun. When this failed, Manuel ran. While running, Manuel heard gunshots behind him and turned to see Renon shooting at him.

After the shooting, Renon, Paet, and Alvarez drove to Alvarez's house where they met Masulit and other Hawaii Brothers gang members who were already there.

Two days later, on September 21, 1989, Alvarez telephoned Walter Felipe (Felipe), a Hawaii Brothers gang member, and told him that Renon had shot someone. Alvarez instructed Felipe to get the gun, which was hidden in the door panel of Renon's van, and hide it. Felipe complied, but later told police where the gun was hidden. Expert testimony at trial revealed that the same gun was involved in both the Mini Park shooting and the Farrington shooting. The evidence at trial also showed that a couple of days before the Farrington shooting, Alvarez, Renon, and Paet had taken the gun to Felipe to grind off the serial numbers.

## II. PROCEDURAL HISTORY
### A. Complaints Filed

Defendants were charged in the same complaint with offenses relating to the Farrington shooting. Renon was charged with the murder of Asuncion, the attemped murder of Manuel, and carrying a firearm without a license. The charges against Paet included being an accomplice to the murder of Asuncion and the attempted murder of Manuel, as well as a firearms violation.

Masulit was charged in a separate complaint with attempted murder in connection with the Mini Park shooting and a firearms violation.

Alvarez was also charged in a separate complaint with hindering prosecution for having asked Felipe to hide the gun used in both shootings.

### B. Motion to Join Defendants in Single Trial

On November 27, 1989, pursuant to Hawaii Rule of Penal Procedure (HRPP) 8(b)(3), the State filed a motion to join Renon,

Paet, Masulit, and Alvarez in a single trial. The State argued that joinder of the four defendants in a single trial was proper because their various offenses were part of an uncharged conspiracy to execute a common scheme or plan of retaliation by one gang against a rival gang. The State also argued that both shootings were so closely connected in time, place, and occasion that it would be difficult for the State to separate proof of one charge from proof of the others. Paet opposed the State's motion, asserting that evidence of his presence at the Mini Park shooting would prejudice the jury against him in the Farrington case. Renon also objected, arguing that it was unfair to join him with the others because he had not been present at the Mini Park shooting.

In granting the State's motion, the court stated (emphasis added):

> Any joinder involves prejudice, and the question is whether or not what is offered is more probative of an issue in the case, either an element of an offense or an element of a defense. Essentially, what the [c]ourt has indicated in its questions during argument is that *the prosecution's proof, both direct and circumstantial, show an uncharged conspiracy; and that's a common scheme or plan. It's for those reasons that the [c]ourt grants the motion to consolidate.*

However, the court granted defendants leave to file motions for severance at any time before trial.

## C. Masulit's Motion for Severance Joined by Renon

On February 2, 1990, Masulit filed a motion for severance on the grounds that he was present only at the Mini Park shooting, was charged only in connection with that shooting, and was not present at either the Farrington shooting or when the other defendants were arrested. Renon joined in the motion. The State

maintained its position that joinder was proper based on its conspiracy theory. The court, in denying the motion for severance, reaffirmed its prior ruling, finding that the evidence established an uncharged conspiracy among the defendants to execute a common plan, which was probative of their motivation and intent with respect to each of the incidents in the case. We note, however, that Masulit was subsequently severed from the case because his counsel became ill during jury selection and was unable to proceed with the trial. The trial court granted Masulit's second motion for severance on July 2, 1990.

### D. Paet's Motion in Limine to Exclude Evidence of Mini Park Shooting Joined by Renon

On July 6, 1990, Paet filed a motion in limine, which was joined by Renon, to exclude evidence of the Mini Park shooting. At the hearing on July 9, 1990, defendants maintained that the State could no longer rely upon its "conspiracy theory" and should be precluded from presenting any evidence of the Mini Park shooting because Masulit was severed from the case. Since Masulit was the only defendant charged in connection with the Mini Park shooting, defendants argued that evidence of the Mini Park shooting was improper character evidence prohibited under Hawaii Rule of Evidence (HRE) 404(b). The State, however, argued that the evidence was probative of "motive ... intent, preparation, plan, knowledge, . . . modus operandi, or absence of mistake or accident," and thus admissible under HRE 404(b). The trial court agreed and denied the motion.

The jury ultimately found Renon guilty of Attempted Murder in the First Degree, Murder in the Second Degree, and Carrying a Firearm on Person Without a License. Paet was found guilty of Accomplice to Murder in the Second Degree, but was found not guilty of Accomplice to Attempted Murder in the First Degree.

During trial, a judgment of acquittal was entered regarding Paet's firearm charge. Alvarez was found guilty of Hindering Prosecution. Defendants timely appealed.

## III. DISCUSSION

On appeal, Renon alone challenges the circuit court's ruling which joined Paet and him with Masulit and Alvarez in a single trial pursuant to HRPP 8(b)(3). Rule 8(b)(3), HRPP, provides in relevant part:

(b) **Joinder of Defendants.** Two or more defendants may be joined in the same charge:

. . . .

(3) when, even if conspiracy is not charged and all of the defendants are not charged in each count, the several offenses charged:

(i) were part of a common scheme or plan; or

(ii) were so closely connected in respect to time, place and occasion that it would be difficult to separate proof of one charge from proof of others.

Both defendants raise the question of whether the circuit court erred in denying defendants' motion in limine to exclude evidence of the Mini Park shooting based on HRE 404(b). Rule 404(b), HRE, provides:

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible where such evidence is probative of any other fact that is of consequence to the determination of the action, such as motive, opportunity, intent, preparation, plan, knowl-

edge, identity, modus operandi, or absence of mistake or accident.

We review the trial court's decision to join defendants in a single trial for an abuse of discretion. *State v. Miyazaki*, 64 Haw. 611, 622–23, 645 P.2d 1340, 1349 (1982). The same standard applies to the issue regarding the admissibility of "other crimes, wrongs, or acts," or, in this case, the Mini Park shooting. *State v. Pinero*, 70 Haw. 509, 778 P.2d 704 (1989); *State v. Castro*, 69 Haw. 633, 756 P.2d 1033 (1988).

The crux of defendants' arguments on appeal is that evidence of the Mini Park shooting was irrelevant or constituted an "other crime, wrong, or act" prohibited under HRE 404(b). We believe that if the evidence of the Mini Park shooting was inadmissible, there would have been no basis to allow joinder. Therefore, we first address the appropriateness of admitting the Mini Park shooting evidence under HRE 404(b).

We have stated that HRE 404(b) "reiterates the common law rule 'that the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is introduced for some purpose other than to suggest that because the defendant is a person of criminal character, it is more probable that he committed the crime for which he is on trial.' " *State v. Castro*, 69 Haw. at 643, 756 P.2d at 1042 (citations omitted). In *Castro*, we recognized that

> when evidence of other crimes, wrongs, and acts is offered by the prosecution, the problem for the trial court is one "of classifying and then balancing[, if necessary]." If its purpose is only "to show some propensity to commit the crime at trial, there is no room for ad hoc balancing. The evidence is then unequivocally inadmissible[.]" If it is probative of any other fact of consequence in the determination of the case, the court must then consider

whether the prejudicial impact of the evidence would be substantially greater than its probative worth.

*Id.* at 644, 756 P.2d at 1042 (quoting **E. W. CLEARY, MCCORMICK ON EVIDENCE** § 190 (3d ed. 1984)). In other words, the court must first determine if the evidence of other crimes, wrongs or acts is relevant and "probative of any other fact that is of consequence to the determination of the action, such as motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident." HRE 404(b). If such evidence is determined to be relevant, the court must then balance the probative value of the evidence against its prejudicial impact. HRE 403.[2]

Thus, in considering the issues on appeal, we must determine 1) whether the evidence of the Mini Park shooting was relevant to the determination of the case, and 2) whether, on balance, its probative value substantially outweighed the danger of unfair prejudice to defendants.

On appeal, Renon's basic argument is that "evidence of the Mini Park incident . . . should not have been admissible against [him] because he was not at nor in anyway involved in the Mini Park case." He also contends that although Masulit was severed from the case before trial, "[i]t cannot be argued that the later severance of defendant Masulit made Judge Huddy's[3] rulings harmless, because his Findings and Conclusions still had the effect of 'tying the hands' of the trial judge[,]" who failed to independently

---

[2] HRE 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[3] Judge Wendell Huddy ruled on the State's pretrial motion for joinder and on Masulit's motion for severance in which Renon joined. Judge Edwin Honda, the trial judge, ruled on Paet's motion in limine to exclude the Mini Park shooting in which Renon also joined.

evaluate the motion in limine. Paet argues that the Mini Park shooting evidence was inadmissible because it served only to show that he was a person of bad character, that is, a gang member. Paet submits that such an image, coupled with the knowledge of the actions of the gang as a whole, compelled the jury to the conclusion of complicity.

The State, on the other hand, argues that evidence of the Mini Park shooting was relevant and probative of an uncharged conspiracy among defendants to execute a common scheme or plan. The State maintains that such a plan was motivated by defendants' desire for revenge against Judas gang members which eventually led to the murder of Asuncion and the attempted murder of Manuel in the parking lot of Farrington High School.

"In cases where the incident offered is a part of the conspiracy alleged in the indictment, the evidence is admissible under Rule 404(b) because it is not an 'other' crime. The evidence is offered as direct evidence of the fact in issue [the conspiracy], not as circumstantial evidence requiring an inference as to the character of the accused." **22 C. WRIGHT & K. GRAHAM, FEDERAL PRACTICE AND PROCEDURE** § 5239, at 450 (1978) (footnote omitted).

Although defendants were not charged in the indictment with conspiracy,

> the rule is that a conspiracy may always be shown as an evidentiary fact to prove participation in the substantive crime, and *a formal charge in the indictment is not a necessary predicate to the admissibility of facts and circumstances showing the existence of a conspiracy to commit the principal offense charged. . . .*
>
> The prosecution is generally entitled to show the entire history of a conspiracy to commit crimes, including the substantive crimes charged, from the time of its inception until its consummation.

*State v. Pulawa*, 58 Haw. 377, 384, 569 P.2d 900, 906 (1977), *cert. denied*, 436 U.S. 925 (1978) (citations omitted, emphasis added). Moreover, "acts of a conspiratorial nature may be shown under the rubric of 'preparation' or 'plan.' " **22 WRIGHT & GRAHAM,** *supra,* § 5239, at 452 (footnote omitted). We have also recognized that "plan" is relevant when the issue is one of conspiracy. *See Castro,* 69 Haw. at 645, 756 P.2d at 1042.

At the hearing on the motion in limine, Paet agreed that the evidence of the Mini Park shooting would only be admissible "[i]f the court is satisfied that there is prima facie evidence that the Farrington High School incident is a continuing series and that there was a planned killing[.]" There is little doubt that the Mini Park shooting was relevant to establish the continuing and escalating hostilities between the rival gangs, which culminated in the Farrington High School shooting. At the hearings on the pretrial motions and at trial, the evidence indicated that Renon, Paet, Masulit, and Alvarez were members of the same gang; and that approximately one month before the Mini Park and Farrington shootings, members of the Judas gang were at the Pearlridge Shopping Center, where Paet and some of his fellow gang members were also present. One of Paet's companions "said something" to the members of the Judas gang, causing the gang members to chase Paet in the parking lot of the shopping center. In another incident, which occurred one to two weeks before the shootings, Judas gang members, including Asuncion, were playing basketball at the Mini Park when Paet, Renon, and Masulit appeared, armed with baseball bats, and chased Asuncion and other Judas gang members.

The evidence also showed that the Mini Park shooting and the Farrington shooting occurred within twenty–four hours of each other and approximately one block apart; that the shootings involved the same two gangs, and were preceded by the Pearlridge incident and the Mini Park baseball bat incident; that Alvarez, Masulit, and Paet were present at the Mini Park shooting; that all

four defendants, including Renon, met for a period of time after the Farrington shooting at Alvarez's house; and that on separate occasions all four defendants had physically handled the firearm used in both incidents.

Renon argues that the prohibited evidence is inadmissible against him because he was not present at the Mini Park shooting incident. However,

> [i]n some conspiracy cases, the "other" act that is proved is not that of the defendant himself but involves conduct of third persons. While Rule 404(b) is not limited to other acts of the defendant, proof of conduct of third persons does not normally support a strong inference as to the character of the defendant himself. . . .

22 WRIGHT & GRAHAM, *supra*, § 4239, at 451 (footnotes omitted). *See also People v. Garnica*, 175 Cal. Rptr. 521, 121 Cal. App. 3d 727 (1981) (evidence that defendant had ordered the murder of another person a week before the charged murder, but was not present at that killing, was held admissible to show a plan, scheme, or conspiracy to murder enemies of defendant's gang even though conspiracy was not charged).

Paet asserts that the Mini Park evidence should have been excluded because it focused on his gang membership, and thus inferred bad character. However,

> [e]ven where the acts are those of the defendant himself and are not within the specifications of the indictment, admissibility can still be justified on the ground that the evidence is offered to prove the operation of the conspiracy, not to prove the character of the accused. In other words, the explanatory construct is not the one whose use is forbidden by Rule 404(b); the prosecution's argument is that the cause of the defendant's conduct was his membership in the conspiracy, not his psychic make-up.

22 WRIGHT & GRAHAM, *supra*, § 5239, at 451 (footnote omitted). Thus, we find that evidence of the Mini Park shooting was relevant to show that Renon and Paet were knowing participants in an uncharged conspiracy to kill Judas gang members, a plan which was motivated by a desire for revenge due to the ongoing hostilities between the two gangs.

Renon, however, argues that joinder based on the uncharged conspiracy is improper in this case because the Mini Park shooting incident would not have been admissible if each defendant were tried separately. Renon relies upon *State v. Gaspar*, 8 Haw. App. 317, 327–28, 801 P.2d 30, 35 (1990), in which the Intermediate Court of Appeals stated that "[a] joint trial may have been unfair to one defendant when . . . the joint trial allowed the admission of evidence damaging to the defendant in question that would not have been admissible in his separate trial involving the other defendant." (Citation omitted.)

In the instant case, even without the issue of an uncharged conspiracy, the Mini Park shooting incident would be admissible under the 404(b) exceptions of "intent," "motive," or "plan." Intent refers to the state of mind with which an act is done or omitted, BLACK'S LAW DICTIONARY 810 (6th ed. 1990), and differs from most of the other 404(b) exceptions because it is an ultimate issue in the case. 22 WRIGHT & GRAHAM, *supra*, § 5242, at 487. Thus, proof of the required mental element of the offenses charged[4] is admissible because it "does not require an inference as

---

[4] Renon was charged with attempted murder in the first degree and murder in the second degree. Murder in the first degree, HRS § 707–701, and murder in the second degree, HRS § 707–701.5, both provide that a person commits the offense of murder if the person *"intentionally or knowingly"* causes the death of more than one person in the same or separate incident (first degree) or of another person (second degree).

Paet was charged with being an accomplice to attempted murder in the first degree and murder in the second degree. "A person is an accomplice of another

to the character of the accused or as to his conduct." *Id.* at 488. Unlike intent, motive is not an ultimate issue. However, evidence of motive is admissible to prove the "state of mind that prompts a person to act in a particular way; an incentive for certain volitional activity." *Id.* § 5240, at 479. Thus, proof of motive may be relevant in tending to refute or support the presumption of innocence. *See People v. Beyea*, 38 Cal. App. 3d 176, 195, 113 Cal. Rptr. 254, 265 (1974). Similarly, proof of a plan is not an ultimate issue, but proof of a plan may be relevant "on the issue of intent or to disprove mistake or inadvertence[,] . . . [or to] prove knowledge on the part of the defendant[,] . . . [or] may also be admissible to show the doing of the criminal act." 22 WRIGHT & GRAHAM, *supra*, § 5244, at 502.

Having charged Renon with murder and attempted murder, the State had the burden to prove that Renon had "intentionally or knowingly" killed Asuncion and had attempted to kill Manuel. Renon admitted that he shot Asuncion, but claimed that he shot in self–defense, thereby placing his intent in issue. Renon also denied shooting at Manuel, despite the accounts by other witnesses. Therefore, evidence of the Mini Park shooting was relevant to refute Renon's claim of self–defense in shooting Asuncion and his claim of innocence in shooting at Manuel.

Paet was charged with being an accomplice to the attempted murder of Manuel and the murder of Asuncion. Evidence of the Mini Park shooting was relevant to prove the nature and extent of Paet's relationship with Renon and other Hawaii Brothers gang members as well as the interaction between the Hawaii Brothers gang and the Judas gang. That evidence was relevant to prove that Paet acted in complicity with Renon to kill Judas gang members.

---

person in the commission of an offense if: (1) *With the intention* of promoting or facilitating the commission of the offense, he: . . . (b) Aids or agrees or attempts to aid the other person in planning or committing it[.]" HRS § 702–222 (emphasis added).

The admission of "gang" evidence to establish intent and motive has been allowed by other jurisdictions. For example, in *People v. Beyea*, 38 Cal. App. 3d 176, 113 Cal. Rptr. 254 (1974), the court held that evidence of a defendant's membership in the notorious Hell's Angels was admissible to prove motive and intent in a homicide case. There, the court found that motive was relevant to refute or support the presumption of innocence and to find premeditation and intent.

In *Commonwealth v. Gwaltney*, 497 Pa. 505, 442 A.2d 236 (1982), evidence that the defendant and victim were members of rival gangs, evidence of their past gang activities and memberships, and evidence of a prior incident where a member of defendant's gang was stabbed by the victim, was held admissible as relevant and probative of whether a conspiracy existed to kill the victim.

We acknowledge that introducing evidence of the Mini Park shooting incident may have had some prejudicial effect on defendants. Therefore, we must now consider whether the probative value of the Mini Park shooting substantially outweighed the danger of unfair prejudice. HRE 403; *State v. Castro*, 69 Haw. 633, 756 P.2d 1033 (1988). In weighing probative value versus prejudicial effect, we have stated that:

> a variety of matters must be considered, including the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

*Id.* at 644, 756 P.2d at 1041 (quoting E. W. CLEARY, McCORMICK ON EVIDENCE § 190, at 565 (3d ed. 1984) (footnote omitted)).

Our consideration of these matters leads us to conclude that the probative value of the Mini Park shooting evidence substan-

tially outweighed the danger of unfair prejudice. We find that all of the "gang" evidence admitted during the joint trial, including the Mini Park shooting, was substantially supported by the testimony of witnesses. The descriptions of the Mini Park and Farrington shootings were similar in that participants were from the same two gangs and the same weapon was used in both incidents. Also, the Mini Park shooting incident occurred within twenty–four hours of the Farrington shooting. Evidence of the Mini Park shooting was necessary and crucial to bridge the Pearlridge and Mini Park baseball bat incidents with the Farrington shooting to show the uncharged conspiracy and the intent and motive of the defendants. "[B]ecause a motive is ordinarily the incentive for criminal behavior, its probative value generally exceeds its prejudicial effect[.]" *Beyea*, 38 Cal. App. 3d at 195, 113 Cal. Rptr. at 265.

Furthermore, we note that the record in this case indicates that prospective jurors were carefully screened for prejudice and bias toward gangs. Thus, the extent to which the jury may have been prejudiced by the "gang" evidence, including the Mini Park shooting, was minimized. *See Castro*, 69 Haw. at 644, 756 P.2d at 1041. We are convinced that the probative value of the Mini Park shooting evidence substantially outweighed the prejudice contemplated by HRE 404(b).

Finally, we consider Renon's argument that the trial court denied the motion in limine because it felt "hard–pressed" not to honor the rulings made by the motions court regarding the prior joinder and severance motions. Renon further submits that "[w]hat [the trial court] should have done and what [it] failed to do at the time of the Motion [in] Limine was to undertake [its] own independent evaluation." This argument is without merit. Our review of the record reveals that at the conclusion of counsel's arguments, the trial court explained (emphasis added):

> All right. The Court has considered the motion, the arguments, and the materials submitted, and although the

Court is not completely bound by the findings of the judge who acted on the motion to sever, he did make certain findings of facts which this court feels are hard–pressed not to honor.

And *viewing the offers of proof independently*, the Court would come to this conclusion; namely, that it will deny [the] motion[] . . . .

The record is clear that the trial court made an independent review of the offers of proof and found that the probative value of the evidence substantially outweighed any prejudicial effect.

## IV. CONCLUSION

Based on the foregoing, we believe that the evidence of the Mini Park shooting was relevant to show that Renon and Paet were knowing participants in an uncharged conspiracy and that even without the issue of an uncharged conspiracy, the prohibited evidence would have been admissible under the 404(b) exceptions of "intent, motive or plan." Although the Mini Park shooting evidence may have had some prejudicial effect, we find that the probative value substantially outweighed the danger of unfair prejudice. We therefore conclude that the trial court did not abuse its discretion in granting the joinder of defendants in a single trial and in denying the motion in limine. Accordingly, the convictions of defendants Efren Renon and Renato Paet are affirmed.

*John D. Yamane* (Leavitt & Yamane, of counsel) for defendant–appellant Efren Renon.

*Ignacio R. Garcia* (Garcia & Garcia, of counsel) for defendant–appellant Renato Paet.

*Keith M. Kaneshiro*, Prosecuting Attorney (*Charlotte J. Duarte* and *James M. Anderson*, Deputy Prosecuting Attorneys, with him on the briefs) for plaintiff–appellee State of Hawaii.