<span style="color:red">**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000030
27-AUG-2025
07:50 AM
Dkt. 93 SO**</span>

NO. CAAP-24-0000030

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
WILLIAM DEL MICHAEL WOODS, also known as Smokey,
Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CPC-21-0000596)


SUMMARY DISPOSITION ORDER
(By: Nakasone, Chief Judge, Leonard and McCullen, JJ.)

Defendant-Appellant William Del Michael Woods (**Woods**) challenges his attempted murder conviction, on grounds of trial evidentiary errors and insufficient evidence to support his conviction. We affirm.

Woods appeals from the January 12, 2024 "Judgment of Conviction and Sentence" (**Judgment**), entered by the Circuit

Court of the First Circuit (**Circuit Court**).[1]  Woods was charged via Indictment with second degree attempted murder against Complainant Jimmy Vaiagae (**Complainant**), for a May 12, 2021, 5:46 a.m. incident, in which Complainant was doused with an accelerant and set on fire while he was sleeping (**charged incident**), allegedly by Woods, near the Longs Drugs store off of the Pali Highway in Honolulu.  Following a 2023 jury trial, Woods was convicted as charged, and sentenced to a life term of imprisonment with the possibility of parole.

On appeal, Woods raises four points of error, contending that the Circuit Court erred by:  **(1)** ruling that a similar incident that occurred 2.5 hours before the 5:46 a.m. charged incident (**3:13 a.m. incident**),[2] was "probative of any other fact that was of consequence" and that "its probative value outweighed its prejudicial effect"; **(2)** denying Woods's "motion for mistrial" for the admission of Honolulu Police Department (**HPD**) Officer Brandon Goda's (**Officer Goda**) lay opinion testimony identifying Woods in the surveillance video of the 3:13 a.m. incident; **(3)** "allowing the purported expert opinion testimony" of a fingerprint examiner; and **(4)** convicting Woods despite the "lack of substantial evidence to support [the] conviction."[3]

---

[1]    The Honorable Kevin A. Souza presided.

[2]    The 3:13 a.m. incident involved a male, identified as Woods by a civilian eyewitness, wearing a black tank top and black shorts, allegedly throwing a Molotov cocktail and a burning rag toward Complainant while Complainant was sleeping; the surrounding area around Complainant igniting, but not Complainant; Woods leaving the scene; and Complainant going back to sleep.

[3]    We have numbered Woods's points of error "A" through "D."  See Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4) (requiring "numbered" points of error).

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we resolve Woods's contentions as follows.

**(1) The evidence of the 3:13 a.m. incident**

Woods argues that the evidence of the 3:13 a.m. incident was inadmissible "bad character" evidence and not relevant under Hawai'i Rules of Evidence (**HRE**) 404(b)[4] because it "was not probative of any other fact that was of consequence." Even if relevant, Woods argues that the evidence should have been excluded as prejudicial, "unnecessary and cumulative" under HRE Rule 403. The State points to State's Exhibits 23 and 24,[5] the surveillance videos of the 3:13 a.m. incident and the charged incident, and responds that the 3:13 a.m. incident aided in identifying Woods as the perpetrator of the charged incident and in proving Woods's intent to kill Complainant.

"'Prior bad act' evidence under HRE Rule 404(b) is admissible when it is 1) relevant and 2) more probative than prejudicial." State v. Behrendt, 124 Hawai'i 90, 102, 237 P.3d 1156, 1168 (2010) (cleaned up). We review the trial court's determination of relevance under HRE Rule 401 "under the right/wrong standard of review." Id. (citation omitted). "However, a trial court's balancing of the probative value of

---

[4]    HRE Rule 404(b) prohibits the admission of "[e]vidence of other crimes, wrongs, or acts" (**prior bad acts**) to prove character, but such evidence may be admissible if other probative value is shown, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident."

[5]    Exhibit 23 was a surveillance video of the 3:13 a.m. incident. Exhibit 24, the surveillance video of the charged incident at 5:46 a.m., showed an individual wearing a hoodie and a mask, carrying a torch and a cup. The individual poured the liquid from the cup onto Complainant, who was sleeping, and then used the torch to light Complainant on fire.

prior bad act evidence against the prejudicial effect of such evidence under HRE Rule 403 is reviewed for abuse of discretion." Id. (ellipses and citation omitted).

Under HRE Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" The Behrendt court explained that when weighing the probative value versus the prejudicial effect of prior bad act evidence under HRE Rule 404(b), the court must consider various factors,[6] which include the ones the Circuit Court referenced here: "the similarities between the crimes" and "the interval of time that ha[d] elapsed between the crimes[.]" Id. at 106, 237 P.3d at 1172 (citation omitted).

The record reflects that in conducting its balancing under HRE Rule 403, the Circuit Court considered the similarities between the prior bad act and the current offense, and the time interval between the two; and it concluded that the 3:13 a.m. evidence was "highly relevant" for permissible purposes under HRE Rule 404(b), as follows:

> THE COURT: . . . As such, I think, under 404(b), the video evidence of the 3:13 a.m. incident does become -- because of the similarities of the acts . . . both the vehicle, the height, the size, the stature of the -- of the individual depicted in both videos, the similar shorts and shoes, the tattoos . . . and other body markings that were recovered, as well as the other items that were recovered from [Woods]'s vehicle, the 3:13 a.m. [incident] video does

---

[6]    The Behrendt court indicated that a trial court "must consider a variety of factors" when weighing probative value versus prejudicial effect in the context of prior bad act evidence; and these factors include:

> the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

Id. at 106, 237 P.3d at 1172 (quoting State v. Renon, 73 Haw. 23, 38, 828 P.2d 1266, 1273 (1992)).

4

> become highly relevant, in this Court's opinion, as to
> perhaps motive, intent, preparation, plan, certainly
> identity, modus operandi, and absence of mistake or fact.
>
> . . . .
>
> Essentially it's -- the State's videos that they have
> presented show [sic] an individual twice attempting to
> douse the [C]omplainant with accelerant and -- and light
> the [C]omplainant on fire. So [sic] the similarities
> between the incidents are -- they're almost exactly the
> same.
>
> And finally, the interval of time that elapsed
> between the incidents is very short. We're talking about a
> little over two hour -- two and a half -- about two and a
> half hours apart on the same exact day by an individual
> that appears to be the same person.
>
> And so [sic] when I do consider the 403 balancing
> factors that the Hawaii Supreme Court has indicated that I
> must consider, the Court does find that the State has
> demonstrated strong and cogent reasons why the 3:13 a.m.
> [incident] video should be presented to the -- to the jury.

(Emphases added.)

Here, the Circuit Court did not err in its determination that the 3:13 a.m. incident was "highly relevant" for other permissible purposes under HRE Rule 404(b) such as motive, intent, preparation, plan, identity, modus operandi, and absence of mistake. See id. at 102, 237 P.3d at 1168. Nor did the Circuit Court abuse its discretion in concluding that the probative value of the 3:13 a.m. incident outweighed its prejudicial effect, based on the similarities between the two incidents and the short interval of time between them. See id. at 107, 237 P.3d at 1173 (upholding admission of prior bad act evidence that is of the "same general type" as the charged conduct and "involv[ing] the same complaining witness").

**(2) Motion for mistrial**

At trial, Officer Goda identified the male in the 3:13 a.m. incident video as the same person he had an interaction with approximately 3.5 hours earlier, at 11:30 p.m.

On appeal, Woods contends that he moved for a mistrial because "the State violated the principles underlying the trial court's ruling on Woods'[s] motion in limine that lay witness testimony be based on their own perception of the incident." Because Officer Goda lacked personal knowledge of the 3:13 a.m. incident, Woods argues that "HRE Rule 602 was ignored, and Officer Goda presented an improper lay witness opinion under HRE Rule 701[,]" because "[l]ay witness testimony must be based on personal knowledge." Woods argues that "Officer Goda testified that [(the prior 11:30 p.m.)] interaction was in response to a call, where the caller identified himself as Woods[,]" the "same individual that was sitting in the courtroom as the defendant"; and the State's attempt "to get Officer Goda to render an opinion that the person depicted in the [3:13 a.m.] surveillance video . . . was Woods," "grazed the surface of prosecutorial misconduct."

The Circuit Court denied the motion for mistrial because Officer Goda did not identify the individual in the 3:13 a.m. surveillance video as Woods, and thus, his answer did not violate the motion in limine, explaining as follows:

> THE COURT: . . . Here it appears as though what Officer Goda testified to was his belief that the person depicted in the 3 -- is it 13 a.m. [sic] video was the same person he interacted with the night before. He did not identify that person as William Woods. The body camera video was in play in which Mr. Woods identified himself as well as the 911 call.
>
> And so [sic] I don't believe at this point based on the questioning that transpired that [Deputy Prosecuting Attorney (**DPA**)]'s question or Officer Goda's answer is

6

> violative of the motion in limine. And so [sic] I'm going
> to respectfully deny your motion for mistrial . . . .

(Emphases added.)

"The denial of a motion for mistrial is within the sound discretion of the trial court and will not be upset absent a clear abuse of discretion." State v. Mark, 120 Hawaiʻi 499, 515, 210 P.3d 22, 38 (App. 2009) (citation omitted).

The sole legal authority upon which Woods relies is HRE Rules 602 and 701. Woods's argument does not explain how Officer Goda's testimony violated a motion in limine ruling, but asserts only that the testimony violated "underlying" "principles" of such ruling. It is not clear what "principles" to which Woods refers. Woods's claim that Officer Goda's testimony "grazed the surface of prosecutorial misconduct[,]" without further explanation, is also vague. We do not address these arguments. See In re Guardianship of Carlsmith, 113 Hawaiʻi 236, 246, 151 P.3d 717, 727 (2007) ("An appellate court may disregard a particular contention if the appellant makes no discernable argument in support of that position." (cleaned up)); HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.").

We address Woods's discernable challenge based on HRE Rules 602 and 701, that Officer Goda lacked personal knowledge of the 3:13 a.m. incident and his lay identification was improper. HRE Rule 602 prohibits a witness's testimony regarding "a matter" unless there is evidence "sufficient to support a finding that the witness has personal knowledge of the matter." Here, Officer Goda testified to the "matter" of his 11:30 p.m. encounter, for which he had personal knowledge under HRE Rule 602. Officer Goda did not testify to any "matter" as

7

to the events depicted in the 3:13 a.m. incident video, and there was no HRE 602 violation. Officer Goda gave a lay opinion identifying the person depicted in the 3:13 a.m. incident video, as the same male he encountered a few hours prior, at 11:30 p.m. Under HRE Rule 701, lay opinion testimony, including identification, is admissible if it is "(1) rationally based on the perception of the witness, and (2) helpful to . . . the determination of a fact in issue." Identification was a "fact in issue" in this case, and this court has previously allowed a lay witness's opinion identifying a defendant through a surveillance video as "helpful" to a jury where "there is some basis for concluding that the witness is more likely to correctly identify the defendant . . . than is the jury." State v. Gabriel, NO. CAAP-19-0000609, 2022 WL 1284613, at *5 (Haw. App. Apr. 29, 2022) (mem. op.) (quoting People v. Thompson, 49 N.E.3d 393, 405 (Ill. 2016)).[7] We conclude that the Circuit Court did not abuse its discretion in denying Woods's motion for a mistrial based on the claimed violation of HRE Rules 602 and 701. See Mark, 120 Hawaiʻi at 515, 210 P.3d at 38.

**(3) Fingerprint expert testimony**

Woods argues the Circuit Court abused its discretion in "qualifying [Lori Kaneshiro (**Kaneshiro**)] as an expert in fingerprint comparison and identification" in violation of HRE Rules 702 and 703 because Kaneshiro "did not have sufficient knowledge, skill, experience, training[,] or education." Woods

---

[7] In Gabriel, this court relied on a federal case interpreting the identical federal rule counterpart to HRE Rule 701, to uphold the trial court's admission of two police officers' lay opinions identifying the defendant through a surveillance video and photograph "as helpful to the jury under HRE Rule 701" in light of the police officers' sufficient prior contact with Gabriel. 2022 WL 1284613, at *7.

also contends that because Kaneshiro based her opinion on a latent fingerprint that was covered "more than 50 percent" by a smudge, "the underlying facts or data from which Kaneshiro rendered her opinion that there was a match" was "unreliable."

"Whether expert testimony should be admitted at trial rests within the sound discretion of the trial court and will not be overturned unless there is a clear abuse of discretion." State v. Maelega, 80 Hawai‘i 172, 180, 907 P.2d 758, 766 (1995) (citation omitted).

The Circuit Court held that Kaneshiro was a qualified expert in latent fingerprint identification, as follows:

> THE COURT: . . . While [Kaneshiro] does not have a bachelor's degree and is not certified by the [International Association of Identification], she is properly certified and qualified to do her job at the Hawaii Criminal Justice Data Center. And her background and qualifications lend this Court to making a finding that this . . . proffered expert is qualified to testify as an expert in this particular field and perform fingerprint identification and analysis as necessary in this particular case.

(Emphasis added.) The Circuit Court addressed the "smudge" argument and concluded Kaneshiro's testimony met "the threshold level of reliability," as follows:

> As to the proffered evidence in this particular case, [Defense Counsel] is correct that we do have a latent fingerprint that does have a large area of it that does contain a smudge or, as the witness put it, a distortion. However, there are ten points of commonality or identification that this particular expert found as between the latent print and the exemplar print.
>
> . . . .
>
> . . . the Court does find the proposed latent fingerprint analysis and expert testimony is not only relevant but does past [sic] muster with respect to the threshold level of reliability . . . .

Here, at the pretrial hearing on Woods's motion in limine to determine the admissibility of the video pursuant to HRE Rule 104, Kaneshiro testified that:  she was a criminal identification supervisor for the Hawaiʻi Criminal Justice Data Center; she had 29 years of experience in fingerprint, tenprint, and latent comparisons; she previously worked for HPD as a latent fingerprint examiner; she was trained by the Federal Bureau of Investigation in latent fingerprint examinations; she took courses in complex fingerprint examination; she testified four times in court as a qualified expert in latent fingerprint comparison and identification; and she handled over 10,000 cases involving latent fingerprint comparisons with ink fingerprints. Despite Kaneshiro's lack of a bachelor's degree and other certifications, the record reflects Kaneshiro's skill, knowledge, experience, and training in the field of latent fingerprint examination to qualify as an expert in this case. See State v. Cababag, 9 Haw. App. 496, 504, 850 P.2d 716, 720 (App. 1993) ("It is not necessary that an expert witness have the highest possible qualifications to testify about a particular matter . . . but the expert witness must have such skill, knowledge, or experience in the field in question" to aid in arriving at the truth. (citation omitted)).

Woods's argument that Kaneshiro's opinion of the latent fingerprint was "unreliable" because of the smudge, goes to the weight, rather than the admissibility of this evidence. Woods cites no authority for his "reliability" challenge, and we note such evidence has been recognized as reliable.  See State v. Escobido-Ortiz, 109 Hawaiʻi 359, 370, 126 P.3d 402, 413 (App. 2005) (noting that the validity of the theory underlying latent fingerprint identification, where proper procedures were

followed for such identification, has been "widely accepted as reliable" (citation omitted)). The Circuit Court did not abuse its discretion in allowing Kaneshiro's expert opinion testimony regarding the latent fingerprint. See Maelega, 80 Hawai'i at 180, 907 P.2d at 766.

**(4) Sufficiency of evidence**

Woods argues that his conviction should be reversed because "there was a lack of credible evidence of sufficient quality" to support Woods's conviction.

"Evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction[.]" State v. Kalaola, 124 Hawai'i 43, 49, 237 P.3d 1109, 1115 (2010) (brackets and citation omitted). "The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact." Id. (citation omitted).

Here, the record reflects, among other things, that "18 percent" of Complainant's body was burned, resulting in "life-threatening injuries"; the surveillance videos from the 3:13 a.m. incident and the charged incident each depicted a person of similar height and stature, attempt to light Complainant on fire twice, succeeding on the second attempt; an eyewitness saw the male in the charged incident, who was wearing a maroon hoodie, enter a vehicle belonging to Woods; Officer Goda identified the male in the 3:13 a.m. incident video as the same male from the 11:30 p.m. encounter who had called 911, and the caller had identified himself as Woods; the male whom Officer Goda encountered at 11:30 p.m. and the male whom Officer

11

Goda later identified in the 3:13 a.m. incident video were both wearing a black tank top per Officer Goda's testimony and as shown in the footage from Officer Goda's body-worn camera (Exhibit 84); and articles of clothing similar to what the suspect wore in both incidents -- the black tank top in the 3:13 a.m. incident and the maroon hoodie in the charged incident -- were both recovered from Woods's vehicle.  Viewed in the light most favorable to the State, there was substantial evidence to convict Woods of attempted murder in the second degree.  See id.

For the foregoing reasons, we affirm the January 12, 2024 Judgment entered by the Circuit Court of the First Circuit.

DATED:  Honolulu, Hawaiʻi, August 27, 2025.

On the briefs:

Harrison L. Kiehm,
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Karen T. Nakasone
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge