**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-17-0000543**
**11-OCT-2018**
**08:03 AM**

NO. CAAP-17-0000543

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
ADRIAN-JOHN C. BRINGAS, also known as
ADRIANJOHN BRINGAS, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 16-1-0617)

MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Leonard and Chan, JJ.)

Defendant-Appellant Adrian-John C. Bringas, also known as AdrianJohn Bringas (**Bringas**), appeals from the Judgment of Conviction and Sentence (**Judgment**) entered on June 21, 2017, in the Circuit Court of the First Circuit (**Circuit Court**), against him and in favor of Plaintiff-Appellee the State of Hawai'i (**State**).[1]

On April 19, 2016, Bringas was indicted by a grand jury and charged with (1) one count of Murder in the Second Degree, in violation of Hawaii Revised Statutes (**HRS**) § 707-701.5 (2014)

---

[1]    The Honorable Paul B.K. Wong presided.

(**Murder Second**),[2] in the death of minor WS (**WS**), and (2) one count of Assault in the Second Degree, in violation of HRS § 707-711(1)(a) (2014)[3] and/or HRS § 707-711(1)(b) and/or HRS § 707-711(1)(d) (**Assault Second**), in relation to complaining witness minor CS (**CS**), WS's brother. After a jury trial, Bringas was found guilty of Murder Second and acquitted of the assault charge.

I.    BACKGROUND

    A.    Pretrial

        Although particular facts were disputed, it is clear that on April 12, 2016, around 10:00 p.m., Bringas had an altercation or altercations with WS and CS. Bringas stabbed WS in the chest, causing perforation to his left lung, heart, aorta, and pulmonary artery resulting in major blood loss. WS was pronounced dead at Queen's Medical Center at 10:35 p.m. CS, in a confrontation with Bringas immediately following the stabbing of

---

[2]    HRS § 707-701.5 provides, in relevant part:

> **§ 707-701.5 Murder in the second degree.** (1) Except as provided in section 707-701, a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person.

[3]    At the time Bringas waws indicted, HRS § 707-711(1) (amended effective July 11, 2016) provides, in relevant part:

> **§ 707-711 Assault in the second degree.** (1) A person commits the offense of assault in the second degree if:
> (a)    The person intentionally or knowingly causes substantial bodily injury to another;
> (b)    The person recklessly causes serious or substantial bodily injury to another;
> . . . .
> (d)    The person intentionally or knowingly causes bodily injury to another with a dangerous instrument[.]

2

WS, suffered a stab wound to his leg. Bringas claimed he was acting in self-defense.

On April 19, 2016, Bringas was charged with Murder Second for intentionally or knowingly causing the death of WS. Bringas was also charged with Assault Second for intentionally, knowingly, or recklessly causing substantial bodily injury to CS with a dangerous instrument.

On January 12, 2017, Bringas filed a Notice of Intent to Use Evidence (**Notice of Intent**) in which he stated that he intended to use evidence as to the alleged gang membership of WS, CS, and witnesses RK and Prescott.

On January 30, 2017, the State filed State of Hawaii's Motion in Limine (**Motion in Limine**), seeking to preclude from use at trial "any testimonial or documentary evidence of 'specific instances of aggressive conduct' of any prosecution witness, including any references to Gang related activities and/or gang membership." It also sought exclusion of prior bad acts, specific instances of untruthfulness, and the prior criminal record of any prosecution witness.

On February 2, 2017, the Circuit Court held a hearing regarding, *inter alia*, the Notice of Intent and the Motion in Limine. Bringas submitted three photographs to the court, which he sought to use as evidence of the gang affiliation of the witnesses. The court asked for an offer of proof regarding the photographs. Bringas argued that the photographs showed the State's witnesses making gang signs, and that their gang affiliation was relevant to his argument that he was merely in

the wrong place at the wrong time and acted in self-defense. He argued that a gang's propensity to protect its "turf" was relevant to his theory of the case that he was attacked without provocation while he was "minding his own business." He also argued that the witnesses blamed Bringas for having stabbed WS and attacked Bringas out of revenge for having stabbed one of their gang members. The Circuit Court asked if Bringas was a member of a rival gang, noting that it had reviewed State v. Renon, 73 Haw. 23, 828 P.2d 1266 (1992), which in the Circuit Court's reading, stood for the rule that "when gang affiliation evidence comes in before the trier of fact, it's to explain the dynamics between two rival gangs that might not otherwise be known to or part of the common knowledge for the trier of fact." Bringas submitted that he was not in a rival gang, but that being in a rival gang was not the only prerequisite for gang members to attack someone who was in the wrong place at the wrong time.

The Circuit Court ruled that evidence would not be allowed in a trial, stating:

> After listening to your arguments and considering Rules 401, 402, 403, of the Hawaii Rules of Evidence, the Court will respectfully preclude the evidence of any gang membership on part of the State's witnesses.
> As we discussed during the hearing of this notice, any probative value to the establishing or to the analysis of any self-defense that may be applicable to Mr. Bringas is truly incremental because even without this particular evidence, given Mr. Veary's offer of proof as to what the witnesses would testify in his case, the self-defense instruction would appear to be applicable irrespective of whether or not any of the State's witnesses were gang members, so the probative value is truly minimally incremental.
> The prejudice, however, is extreme because the mere connotation that a person is affiliated or a member of a gang is truly negative and adverse to that particular witness, and here, there is no, no reason or no value and no gateway for this propensity evidence for the State's witnesses, and even if there was, again, some minimal probative value, the prejudice to these witnesses that they

4

are affiliated with a gang or gang members is so negative,
meaning the prejudicial value is so great in light of the
minimal probative value of such evidence that Rule 403
really does preclude it, and as I've considered State vs.
Renon, again, the only gang case here in the state of
Hawaii, it's not the kind of situation that we have here.

We note here that the exclusion of the gang-related
evidence was not included as a basis for relief in Bringas's
post-trial Motion for New Trial. However, in the hearing on that
motion, the Court further explained its previous ruling, stating:

And just so we're clear, I think when that decision
was made, we assumed, the Court assumed that it was,
in fact, gang activity that was depicted. But the
basis of excluding the photographs was whether or not
it could relate to any relevant issue at trial. And
the Court found that without some kind of expert
testimony or some kind of testimony linking gang
activity to whatever issue might be relevant at trial,
that it was going to be prohibited under Rule 403 of
the Hawai'i Rules of Evidence.

B.    Trial

Elaine Prescott (**Prescott**), a friend of WS, testified
as to the events leading to the altercation between Bringas and
WS.  Prescott testified that she was hanging out the evening of
the altercation with WS and CS at Kuhio Park Terrace where CS and
WS's grandfather lived.  Also with them were minor RK (**RK**) and
minor WK (**WK**).  Prescott was with RK, WK, and CS in a stairwell
of Kuhio Park Terrace when she decided to walk to the store for
cigarettes.  WS had previously left the group to park a car.  On
the way to the store Prescott observed WS behind a trash dumpster
speaking with Bringas, whom she did not know.

Prescott testified that she saw Bringas and WS speaking
and approached them; she saw that WS was smoking marijuana and
asked to smoke with them.  RK, Prescott's boyfriend, approached
and saw Prescott and asked what she was doing; he could not see

WS and Bringas due to the angle from where he was standing. She told him to go away, and he started to return to the stairwell. While speaking with RK, Prescott overheard Bringas asking WS if he "wanted to buy a dime." WS said no because he did not have any money. When Prescott turned back to WS and Bringas after speaking with RK, WS and Bringas were already fighting. Initially, WS and Bringas were not using weapons but only shoving and punching. WS and Bringas ended up against a wall next to the trash can, at which time Prescott observed that Bringas reached into his backpack and retrieved something shiny. Prescott told WS to run, which he did. Bringas chased WS, caught him, and stabbed him. WS tried to get away from Bringas, but Bringas grabbed a hold of his shirt, and WS fell down by a truck. According to Prescott, Bringas yelled, "Wooooo, I like this, I like this, I want some more."

RK testified that he heard the commotion of the fight and returned to where he had spoken with Prescott. He observed WS and Bringas punching each other but he did not see a weapon. Prescott said to RK, "Baby, go get him, that's the guy." RK saw the fight move into the road and heard Bringas say, "Oh, he likes this, he wants some more." RK engaged Bringas and they began to fight; then RK saw that Bringas had a shiny object in his hand. RK ran away because he felt his life was threatened.

CS testified that he heard the commotion caused by the altercation and heard Prescott screaming, so he left the stairwell and ran through the parking lot towards the screaming. CS heard a girl say, "Oh that's the guy, that's the guy," and he

saw Bringas walking with his backpack. CS grabbed Bringas's backpack, and then they began to fight. CS saw something in Bringas's hand. During the fight, Bringas stabbed CS in his right hip. CS then fled. CS's stab-wound was not life-threatening.

Bringas also testified at trial. Bringas testified that he had stopped at Kuhio Park Terrace because his bike chain had come off his bike. He pulled out his knife to fix the chain, and, as he was finishing up, WS approached him. Bringas stated that WS inquired about what was happening and offered Bringas a hit of the marijuana he was smoking. Bringas testified it was WS who offered to sell him some drugs, which Bringas declined. WS began asking questions about who Bringas was, which made Bringas feel uncomfortable. Bringas placed his knife in his waistband because he felt the situation was uncomfortable. It was at this point that Prescott appeared and smoked a joint with them. According to Bringas, WS and Prescott started to walk away and Bringas went to throw some trash in the dumpster. Out of nowhere, Bringas was hit, saw a blinding white flash, and fell to the ground. Bringas jumped up and attempted to run away; he rolled his ankle, fell to the ground, and then someone was on top of him and a struggle ensued.

Bringas claimed that he did not pull out his knife until he got out into the street and he encountered two males coming toward him. He claimed that the two men had something in their hands. Bringas claimed Prescott at this time was spilling the contents of his backpack on the ground, and he concluded he

was being robbed. Bringas testified at this point he was hit again and saw another white flash; he cannot remember who hit him or with what. He testified he was still getting beaten up and he was flailing with his knife in his hand in an effort to get away. Bringas claimed he was not aware that he had stabbed anyone and eventually the attack stopped and he ran away. Bringas claimed he was pursued and a man with something in his hand hit him in the back of the head. He was tackled to the ground and beaten up again, and again Bringas used the knife to get away. At this point, Bringas disposed of the knife because he did not want to scare a truck that was approaching, which allowed him to get in and drove him to a nearby gas station.

Three additional witnesses unconnected to the altercation also testified at trial. Pitson Kafoto (**Kafoto**) testified that he was returning home on the night of the incident in his truck with his wife and daughters when he observed Prescott on the ground with WS's head in her lap. He also observed two men fighting with one man swinging an object at the other who defended himself with a backpack. Minor RP (**RP**), Kafoto's fifteen-year-old daughter, also testified. RP and her mother were in the cab of Kafoto's truck when they came upon the altercation. She recalled seeing a Polynesian-looking man attacking Bringas and at some point in the altercation a second man also joined in the fight. RP recalled somebody telling the two men to "stop 'cause he's had enough."

Minor R (**Minor R**), sixteen years old at trial, testified that he had known WS since he was eight years old. He

was walking back home the night of the altercation when he saw CS and Bringas fighting. After Bringas took off, Minor R ran after him but did not catch him. When he returned, he found CS holding a white pipe.

Two police officers responding to calls about a stabbing on Ahonui Street were separately flagged down en route at a nearby gas station. Officer Scott Matsumura (**Officer Matsumura**) testified that he found Bringas, who appeared to be bleeding from lacerations to the side and back of his head. Bringas struck Officer Matsumura as unhappy to see him and uncooperative. Officer Nicholas Schlapak (**Officer Schlapak**) also testified that Bringas told him that he had been robbed and he had acted in self-defense.

The jury returned a verdict of guilty on Count I, Murder in the Second Degree, but also answered a special interrogatory on the verdict form which, according to the jury's instructions, was only to be answered if the jury found Bringas guilty of the lesser included offense of Assault in the Third Degree. On Count II, the jury returned a verdict of not guilty, but again answered a special interrogatory that was only to be answered if it had found Bringas guilty of Assault in the Third Degree. The Court, the State, and defense counsel became aware of the discrepancy and discussed what should occur. At first, it was agreed that the jury would be called back on a subsequent day to clear up the discrepancy. The jury was called in and informed that it would need to come back. However, after going off the record for a period of the time, the court went back on the

9

record and announced that it was going to reverse its previous order and the jury would not be called back. After the jury was excused, Bringas's counsel was asked if he wanted to place anything on the record and he responded that he had no objections to discharging the jury.

C. Post-Trial

Bringas filed a Motion for New Trial pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 33. Bringas argued that a new trial was "in the interest of justice" because the jury's unnecessary response to the special interrogatory question made it appear that the jury verdict was "so manifestly against the weight of the evidence as to indicate bias, prejudice, passion, or misunderstanding of the charge of the court on the part of the jury." The Circuit Court denied the motion based on its determination that the verdict was not against the weight of the evidence.

Bringas was sentenced to an indeterminate term of life imprisonment with the possibility of parole on Count I. Bringas now appeals.

II. POINTS OF ERROR

On appeal, Bringas raises two points of error, contending that the Circuit Court erred when it: (1) failed to resolve the jury's inconsistent verdicts, chose which part of the verdict forms to read and omit, and then failed to grant the Motion for New Trial; and (2) precluded Bringas from introducing evidence that Bringas claimed would show that WS and CS were gang members and precluded cross-examination of certain State

witnesses regarding their gang affiliations to support Bringas's claim that WS and CS were the initial aggressors.

III. APPLICABLE STANDARDS OF REVIEW

The Circuit Court's decision on a motion for a new trial is reviewed for abuse of discretion. See State v. Bailey, 126 Hawai'i 383, 398, 271 P.3d 1142, 1157 (2012). "The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." State v. Furutani, 76 Hawai'i 172, 179, 873 P.2d 51, 58 (1994) (citations and quotations omitted).

> [D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard.

State v. Martinez, 101 Hawai'i 332, 339, 68 P.3d 606, 613 (2003) (quoting Kealoha v. Cty. of Hawaii, 74 Haw. 308, 319, 844 P.2d 670, 676 (1993)). "Where the evidentiary ruling at issue concerns admissibility based upon relevance, under [Hawai'i Rules of Evidence (HRE)] Rules 401 and 402, the proper standard of appellate review is the right/wrong standard." Id. (citing State v. Toro, 77 Hawai'i 340, 347, 884 P.2d 403, 410 (Haw. App. 1994). However, evidentiary decisions made under HRE Rule 403, which require a judgment call, are reviewed for abuse of discretion. See State v. Staley, 91 Hawai'i 275, 281, 982 P.2d 904, 910 (1999). "HRE [Rule] 404 represents a particularized application of the principle of HRE 403 (see Commentary to HRE 404), and we will employ the same abuse of discretion standard of review."

State v. Richie, 88 Hawai'i 19, 37, 960 P.2d 1227, 1245 (1998) (citation omitted).

Where evidence is improperly excluded, the judgment of the trial court must be reversed unless it can affirmatively be said that the exclusion was harmless beyond a reasonable doubt. See State v. Nofoa, 135 Hawai'i 220, 229, 349 P.3d 327, 336 (2015).

IV.    DISCUSSION

A.    The Verdict Forms

Bringas argues on appeal that the Circuit Court "erred in failing to resolve the jury's inconsistent verdicts prior to having them read in open court, erred in choosing which part of the verdict forms to read and which to omit, and abused its discretion in denying the Motion for New Trial."

The jury was given two one-page verdict forms, one form for each count. After deliberations were completed, each form was marked, dated, and signed by the Foreperson.

As to Count I, the upper part of the form included six options, which included not guilty, guilty as charged of Murder Second, and four included offenses of Manslaughter, Assault in the First Degree, Assault in the Second Degree, and Assault in the Third Degree. The line indicating a finding that Bringas was "guilty as charged of the offense of Murder in the Second Degree" was marked, with none of the other options marked. Directly below, the lower part of the form included a special interrogatory, which stated: "Did the prosecution prove beyond a reasonable doubt that the fight or scuffle was not entered into

by mutual consent? (Your answer to this question must be unanimous.)" Below the question, the form included answer options of yes or no. "No" was marked.[4]

In the jury instructions, the jury was instructed that "if and only if you find the defendant not guilty of Murder in the Second Degree, or you are unable to reach a unanimous verdict as to this offense, then you must consider whether the defendant is guilty or not guilty of the included offense of Manslaughter." The jury was similarly instructed, in sequence, to consider each of the lesser offenses "if and only if" they found Bringas not guilty or could not reach a verdict on the greater offense. With respect to the final included offense, the instructions stated:[5]

> In Count I of the Indictment, if you find that the prosecution has proven the offense of Assault in the Third Degree beyond a reasonable doubt, then you must also consider whether the fight or scuffle was entered into by mutual consent, whether expressly or by conduct.
> You must determine whether the prosecution has proven beyond a reasonable doubt that the fight or scuffle was not entered into by mutual consent. This determination must be unanimous and is to be indicated by answering "yes" or "no" on a special interrogatory that will be provided to you.

Thus, the record is clear that the jury did not follow the Circuit Court's instruction to answer the special interrogatory question only if it did not reach a verdict on a greater offense.

---

[4] As to Count II, the upper part of the form included three options, which included not guilty, guilty as charged, and an included offense. The line indicating a finding that Bringas was "not guilty" was marked, with none of the other options marked. Directly below, the lower part of the form included the same special interrogatory as for Count I, which stated: "Did the prosecution prove beyond a reasonable doubt that the fight or scuffle was not entered into by mutual consent? (Your answer to this question must be unanimous.)" Below the question, the form included answer options of yes or no. "Yes" was marked.

[5] The jury instructions as to Count II were similarly constructed.

Bringas filed a motion for new trial based on HRS § 635-56 (2016) and HRPP Rule 33. HRS § 635-56 provides:

§ 635-56 **Grounds for new trial.** In any civil case or in any criminal case wherein a verdict of guilty has been rendered, <u>the court may set aside the verdict when it appears to be so manifestly against the weight of the evidence as to indicate</u> bias, prejudice, passion, or <u>misunderstanding of the charge of the court on the part of the jury</u>; or the court may in any civil or criminal case grant a new trial for any legal cause.

(Emphasis added).

HRPP Rule 33 states:

Rule 33. **NEW TRIAL.**

<u>The court on motion of a defendant may grant a new trial to the defendant if required in the interest of justice.</u> If trial was by the court without a jury, the court on motion of a defendant for a new trial may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial shall be made within 10 days after verdict or finding of guilty or within such further time as the court may fix during the 10-day period. The finding of guilty may be entered in writing or orally on the record.

(Emphasis added).

Bringas argues that a new trial should have been granted "in the interest of justice" as the verdicts clearly reflected a "misunderstanding of the charge of the court on the part of the jury." Bringas relies principally on the Hawai'i Supreme Court's decision in <u>Carr v. Strode</u>, which holds:

A conflict in the jury's answers to questions in a special verdict will warrant a new trial only if those answers are irreconcilably inconsistent, and the verdict will not be disturbed if the answers can be reconciled under any theory. [<u>Craft v. Peebles</u>, 78 Hawai'i 287, 307, 893 P.2d 138, 158 (1995)] (quotation marks and citations omitted). The theory, however, must be supported by the trial court's instructions to the jury. <u>See</u> <u>Toner v. Lederle Laboratories,</u> 828 F.2d 510, 512 (9th Cir. 1987) ("When faced with a claim that verdicts are inconsistent, the court must search for a reasonable way to read the verdicts as expressing a coherent view of the case, and must exhaust this effort before it is free to dismiss the jury's verdict and remand the case for a new trial. The consistency of the jury verdicts must be considered in light of the judge's instructions to the

jury." (citations omitted)), *cert. denied*, 485 U.S.
942, 108 S.Ct. 1122, 99 L.Ed.2d 282 (1988).

<u>Carr v. Strode</u>, 79 Hawai'i 475, 489, 904 P.2d 489, 503 (1995).

In <u>Carr</u>, the trial court had (conditionally) granted a new trial because of alleged "irreconcilable differences" in the jury's answers to two special interrogatories. <u>Id.</u> In this case, however, Bringas has not argued or explained how the jury's finding that he was guilty as charged of the offense of Murder Second is irreconcilably inconsistent with a finding the jury's negative response to the question: "Did the prosecution prove beyond a reasonable doubt that the fight or scuffle was not entered into by mutual consent?" Instead, Bringas relies solely on fact that the jury answered the special interrogatory when it did not need to, and was instructed not to, reach the question. Based on that ground, Bringas points to the "misunderstanding of the charge" language in HRS § 635-56; Bringas does so disregarding the entirety of that statutory concept, which is that the court may set aside the verdict *when it appears to be so manifestly against the weight of the evidence* that it indicates a misunderstanding the court's instructions to the jury.

The Circuit Court, on the other hand, grounded its decision to deny Bringas's request for a new trial in its assessment of the weight of the evidence, stating, in relevant part:

> The Court finds that factually the defendant, Adrian-John Bringas in this case, did cause the death of [WS] with a single puncture wound to the decedent's chest. The mechanism of death is really not disputed and has not been disputed in this case.
>
> Two, the true issue at trial was whether defendant was justified in that act under Hawai'i Revised Statutes Section

15

703-304. That is the section allowing the use of force for self-protection, otherwise known as self-defense.

Three, the evidence presented required the jury in this case to determine credibility on the issue of self-defense.

And, four, the jury, charged with the duty to determine credibility, found that based on credible evidence defendant was not justified in the use of deadly force. And, accordingly, the jury's verdict is not against the weight of evidence presented in this case.

On appeal, Bringas does not challenge the Circuit Court's assessment of the weight of the evidence, which we conclude is supported by the record on appeal. Instead, it appears that Bringas asks this court to conclude that the mere answering of the question, contrary to the jury instructions, is sufficient legal cause that "in the interest of justice" it was an abuse of discretion to deny a new trial. We decline to reach that conclusion in this case.

First, we note that the issue of "mutual affray" was relevant only insofar as it constitutes "a mitigating defense" to Assault in the Third Degree and lessens the severity of the offense from a misdemeanor to a petty misdemeanor. See HRS § 707-712 (2014);[6] State v. Kikuta, 125 Hawai'i 78, 96, 253 P.3d 639, 657 (2011) ("mutual affray is a mitigating defense that reduces the offense of Assault in the Third Degree to a petty

---

[6]     HRS § 707-712 states:

§ 707-712 **Assault in the third degree.** (1) A person commits the offense of assault in the third degree if the person:
(a)     Intentionally, knowingly, or recklessly causes bodily injury to another person; or
(b)     Negligently causes bodily injury to another person with a dangerous instrument.
(2)     Assault in the third degree is a misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty misdemeanor.

misdemeanor"). To prove "mutual affray," the defendant must prove that the "fight or scuffle" was entered into by "mutual consent." Id. at 96-97, 253 P.3d at 656-57. The jury's answer to the special interrogatory indicated only that the State failed to prove that the fight was not entered into by mutual consent. Where one uses deadly force claiming self-defense, the applicable defense is that set out by HRS § 703-304 (2014)[7] (use of force in self-protection). Even if the jury had believed that the fight was initiated by mutual consent, which was not in fact the State's or Bringas's theory of the case argued at trial, using deadly force in self-defense required Bringas to prove that

---

[7]     HRS § 703-304 states, in relevant part:

**§ 703-304  Use of force in self-protection.**  (1) Subject to the provisions of this section and of section 703-308, the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion.
        (2)     The use of deadly force is justifiable under this section if the actor believes that deadly force is necessary to protect himself against death, serious bodily injury, kidnapping, rape, or forcible sodomy.
        (3) Except as otherwise provided in subsections (4) and (5) of this section, a person employing protective force may estimate the necessity thereof under the circumstances as he believes them to be when the force is used without retreating, surrendering possession, doing any other act which he has no legal duty to do, or abstaining from any lawful action.
        . . . .

        (5)     The use of deadly force is not justifiable under this section if:
        (a)     The actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or
        (b)     The actor knows that he can avoid the necessity of using such force with complete safety by retreating or by surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a demand that he abstain from any action which he has no duty to take[.]

deadly force was necessary to protect himself against death or serious bodily injury. HRS § 703-304(2). The jury was properly instructed with respect to self-defense. The jury, having been properly instructed with respect to Bringas's burden of proving self-defense, found him guilty of Murder Second. We conclude that the superfluous answering of the special interrogatory did not undermine or cast any doubt upon the jury's verdict, much less create an irreconcilable inconsistency with the jury's verdict that Bringas was guilty of Murder Second. See Briones v. State, 74 Haw. 442, 457-59, 848 P.2d 966, 974-75 (1993) (noting that the guilty verdicts were inconsistent because they could only have been based on inconsistent and irreconcilable factual findings).

In addition, we conclude that, under the circumstances of this case, the unnecessary answering of the special interrogatory does not create an inconsistent verdict, rather it is surplusage that can be disregarded. See, e.g., White v. Grinfas, 809 F.2d 1157, 1161 (5th Cir. 1987) ("To effectuate best the intent of the jury, we hold that if the district court has correctly found that the jury's answer to a question that was supposed to terminate further inquiry is clear and disposes of the legal issues, on review we must ignore the jury's necessarily conflicting answers to any other questions. The subsequent questions are by definition irrelevant in these circumstances, and cannot be used to impeach the jury's clear verdict."); Carr v. Wal-Mart Stores, Inc., 312 F.3d 667, 674 (5th Cir. 2002) ("district court does not abuse its discretion in reconciling

verdicts containing answers to interrogatories that the jury was instructed not to answer, when it either disregards the superfluous answers in their entirety, or resubmits the interrogatories to the jury"); Floyd v. Laws, 929 F.2d 1390, 1397 (9th Cir. 1991) (recognizing and applying principle that "special findings issued in violation of the trial court's express instructions do not constitute legitimate or viable findings of fact. The trial court must therefore dismiss them as surplusage, as a matter of law.").

Bringas also argues that the Circuit Court erred in not allowing him to conduct an in-court examination of the jurors to determine whether the verdict was subject to challenge, citing the Hawai'i Rules of Professional Conduct (**HRPC**). HRPC Rule 3.5(e) states, in relevant part:

> A lawyer shall not:
> (4) after dismissal of the jury in a case with which the lawyer is connected, communicate with a juror regarding the trial except that:
> (ii) upon leave of the court for good cause shown, a lawyer who believes there are grounds for legal challenge to a verdict may conduct an in-court examination of jurors or former jurors to determine whether the verdict is subject to challenge.

HRPC Rule 3.5(e)(4)(ii). The HRPC are irrelevant to the issues presented here. HRPC Rule 3.5(e) governs the professional conduct of lawyers regarding communications with jurors and does not provide the substantive basis to the relief requested. More importantly, in this case, we have concluded that the issue of "mutual affray" is irrelevant to the charge and verdict concerning the offense of Murder Second. Therefore, we conclude that good cause was not shown to recall and examine the jurors in this case.

For these reasons, we conclude that the Circuit Court did not err or abuse its discretion in denying the Motion for New Trial.

B.    The Preclusion of Evidence Related to Gang Activity

Bringas argues that the Circuit Court erred in precluding the introduction of photos purportedly indicating that WS and CS were gang members, as well as erred in precluding cross-examination of certain State witnesses about their alleged gang affiliations to support Bringas's claim that WS and CS were the initial aggressors in their confrontations with Bringas.

HRE Rule 404 generally prohibits evidence of a person's character or a trait of a person's character for the purpose of proving action in conformity therewith on a particular occasion.[8]

---

[8]    HRE Rule 404 states:

> **Rule 404  Character evidence not admissible to prove conduct; exceptions; other crimes** (a) Character evidence generally. Evidence of a person's character or a trait of a person's character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>     (1)    Character of accused. Evidence of a pertinent trait of character of an accused offered by an accused, or by the prosecution to rebut the same;
>     (2)    Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;
>     (3)    Character of witness. Evidence of the character of a witness, as provided in rules 607, 608, 609, and 609.1.
>     (b)    Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this subsection shall provide reasonable
>
> (continued...)

20

However, HRE Rule 404(a)(2) allows "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused[.]" The use of evidence of other crimes, wrongs, or acts is further limited as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this subsection shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the date, location, and general nature of any such evidence it intends to introduce at trial.

HRE Rule 404(b).

This court has explained that under Rule 404, where there is an actual factual issue as to who was the initial aggressor in a violent confrontation, the victim or the defendant, "the defendant may introduce evidence of the other person's violent or aggressive character." State v. Adam, 97 Hawai'i 413, 418, 38 P.3d 581, 586 (App. 2001); see also State v. Lui, 61 Haw. 328, 329-30 603 P.2d 151, 154 (1979) (holding that prior to the adoption of the Hawai'i Rules of Evidence, the trial court did not abuse its discretion in excluding evidence of victim's record of criminal violence because the facts were clear that the defendant, and not the victim, had been the aggressor. In other words, evidence of the victim's record of criminal violence was not pertinent to any dispute of material fact in the

---

[8](...continued)
notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the date, location, and general nature of any such evidence it intends to introduce at trial.

case).  In <u>Adam</u>, we analyzed the Hawai'i Supreme Court's decision regarding the same topic in <u>State v. Basque</u>, 66 Haw. 510, 666 P.2d 599 (1983), and explained that in the <u>Basque</u> case,

> the Hawai'i Supreme Court reversed the trial court's denial of Basque's request to introduce a homicide victim's record of criminal violence.  There was a struggle between Basque and the victim for Basque's gun and the evidence presented was unclear and conflicting as to who was the aggressor. The State's version was that Basque shot the gun and wounded the victim and then, in a struggle for the gun, another shot killed the victim.  Basque's version was that Basque and the victim grabbed for the gun at the same time and, during the struggle, both shots were fired. In other words, evidence of the victim's record of criminal violence was pertinent to the question of whether Basque was trying to prevent the victim from using the gun to harm Basque.

<u>Id.</u> at 417, 38 P.3d at 585.  In <u>Basque</u>, notwithstanding the general prohibition of HRE Rule 404(b), the Hawai'i Supreme Court stated, in relevant part, as follows:

> In <u>Lui</u>, however, we treated general character evidence and specific prior acts (including those reflected in the victim's criminal record) the same for purposes of corroborating a defendant's self-defense claim as to who was the aggressor.  A growing number of other courts are in accord.  As Dean Wigmore has stated:  [T]here is no substantial reason against evidencing the character (of a deceased victim) by particular instances of violent or quarrelsome conduct. Such instances may be very significant; their number can be controlled by the trial court's discretion; and the prohibitory considerations applicable to an accused's character have here little or no force.

<u>Basque</u>, 66 Haw. at 514, 666 P.2d at 602 (citations, internal quotation marks and emphasis omitted).

The State admits, and we agree, that there was sufficient evidence presented through Bringas's testimony to create a factual dispute as to who was the initial aggressor in Bringas's confrontation with WS and CS.  Therefore, pursuant to HRE 404(a)(2), Bringas could present evidence regarding WS and CS's alleged violent or aggressive characters.  <u>See</u> <u>Adam</u>, 97 Hawai'i at 418, 38 P.3d at 586.

Nevertheless, the evidence that Bringas sought to offer to prove WS and CS's alleged violent or aggressive characters must still be relevant to be admissible. See HRE Rules 401[9] and 402.[10] Furthermore, even if evidence is admissible under HRE Rules 401, 402, 404(a) and/or Rule 404(b), it remains subject to the HRE Rule 403[11] balancing test. See State v. Hilario, 139 Hawai'i 546, 557, 394 P.3d 776, 787 (App. 2017) (stating that evidence offered under HRE Rule 404(b) is still subject to balance test of HRE Rule 403); Renon, 73 Haw. at 38, 828 P.2d at 1273 (same); see also State v. Pacheco, No. CAAP-12-0000960, 2014 WL 1392905 at *5 (Haw. App. April 10, 2014) (mem. op.) (stating that evidence offered under Rule 404(a)(1) must still be reviewed with respect to HRE Rule 403); State v. McDonnell, 141 Hawai'i 280, 293, 409 P.3d 684, 697 (2017) (even if expert testimony is

---

[9]     HRE Rule 401 states:

     **Rule 401.  Definition of "relevant evidence".** "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

[10]    HRE Rule 402 states:

     **Rule 402  Relevant evidence generally admissible; irrelevant evidence inadmissible.**  All relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the State of Hawaii, by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible.

[11]    HRE Rule 403 states:

     **Rule 403  Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.**  Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

relevant and admissible under HRE Rules 401, 401, and 407, it may still be excluded under HRE Rule 403); Lui, 61 Haw. at 331, 603 P.2d at 154 (prior to adoption of the HRE, character evidence of deceased must still be evaluated with reference to balancing principle now contained in HRE Rule 403).

HRE Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In weighing the probative value of the evidence against the possible prejudicial effect, we consider

> the strength of the evidence as to the commission of the
> other crime, the similarities between the crimes, the
> interval of time that has elapsed between the crimes, the
> need for the evidence, the efficacy of alternative proof,
> and the degree to which the evidence probably will rouse the
> jury to overmastering hostility.

Hilario, 139 Hawai'i at 557, 394 P.3d at 787 (quoting State v. Behrendt, 124 Hawai'i 90, 106, 237 P.3d 1156, 1172 (2010) (citation omitted)).

Bringas sought to introduce a photo that he alleges demonstrates that WS and CS were in a gang, in addition to asking questions of other State's witnesses regarding WS and CS's alleged gang history. He argued that this evidence would explain why Bringas was attacked by WS without provocation because gangs often do such things to protect their turf. At the hearing on the Motion in Limine, the Circuit Court observed that Bringas's theory relied on speculation and would likely require expert testimony, which Bringas did not intend to provide. The Circuit

Court ruled that any probative value of the evidence of alleged gang membership would be at best incremental to Bringas's self-defense claim whereas the prejudice would be extreme. The Circuit Court precluded any evidence regarding gang membership of WS, CS, and the State's witnesses.

First, we conclude that the Circuit Court did not err in concluding that the probative value of the evidence Bringas sought to admit to prove WS and CS were involved in gang activity was very slight. The evidence fell more neatly within HRE Rule 404(b) rather than HRE Rule 404(a)(2) as membership in a gang is not direct evidence of a "pertinent trait of character," e.g., aggressive and violent behavior. Rather, membership in a gang is an act from which Bringas seeks to create an inference of motive for WS's alleged initiation of their confrontation. We agree that membership in a gang could be particularly relevant if there was a history of gang violence between the defendant and a victim that explains the motive for an act of violence connected thereto. See, e.g., Renon, 73 Haw. at 30-39, 828 P.2d at 1270-74 (evidence of shooting that occurred 24 hours before charged conduct was relevant to show defendants were knowing participants in an uncharged conspiracy to kill rival gang members). In this case, however, the connection between WS and CS's alleged gang membership and their confrontations with Bringas is much more tenuous. There was no allegation of a previous history between Bringas and WS or anyone else involved in the confrontation; they did not know each other. There was no evidence that Bringas was in a rival gang or that their alleged gang had any particular

25

hostility towards anyone, including Bringas. There is no evidence that WS's actions, as alleged by Bringas, had any relation whatsoever to his alleged membership in a gang. Rather, Bringas argues that WS's alleged gang membership, in and of itself, explains why WS attacked him without provocation because gangs have a general desire to control its turf.

In light of the rather attenuated probity of the evidence Bringas sought to admit at trial, the Circuit Court properly considered it in light of HRE Rule 403, which permits the Circuit Court to exclude relevant evidence if, *inter alia*, "its probative value is substantially outweighed by the danger of unfair prejudice." HRE Rule 403. Again, we remain mindful that "'the delicate balance between probative value and prejudicial effect,' . . . 'lies largely within the discretion of the trial court.'" State v. Maluia, 107 Hawai'i 20, 32, 108 P.3d 974, 986 (2005) (quoting State v. Iaukea, 56 Haw. 343, 349, 537 P.2d 724, 729 (1975)).

The Circuit Court found that the prejudicial effect of admitting the evidence of alleged gang affiliation would be "extreme" and propensity evidence that carries "truly negative" connotations. In weighing the probative value of the sought evidence against the prejudicial effect, the Circuit Court concluded that the evidence should be precluded from trial. We conclude that the Circuit Court did not abuse its discretion as the probative value of the evidence was slight and the potential prejudicial effective was extreme.

Regarding the preclusion of questioning regarding alleged gang membership of the State's witnesses, Bringas fails to argue or even cite to the applicable Rules of Evidence applicable to the examination of witnesses. See, e.g., HRE Rules 608[12] and 609.1.[13] It does not appear that Bringas makes any distinction on appeal between the gang evidence as sought to be admitted against the deceased victim, WS, and CS, and the State's other witnesses. Regardless, assuming *arguendo* that the evidence of gang membership could have been admitted to impeach the State's witnesses or provide evidence of bias, interest, or motive under the applicable rules, we conclude for the reasons

---

[12]     HRE Rule 608 states, in relevant part:

**Rule 608  Evidence of character and conduct of witness.** (a) Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations:
    (1)    The evidence may refer only to character for truthfulness or untruthfulness, and
    (2)    Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
    (b)    Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking the witness' credibility, if probative of untruthfulness, may be inquired into on cross-examination of the witness and, in the discretion of the court, may be proved by extrinsic evidence. When a witness testifies to the character of another witness under subsection (a), relevant specific instances of the other witness' conduct may be inquired into on cross-examination but may not be proved by extrinsic evidence.

[13]     HRE Rule 609.1 states:

**Rule 609.1  Evidence of bias, interest, or motive.** (a) General rule. The credibility of a witness may be attacked by evidence of bias, interest, or motive.

    (b)    Extrinsic evidence of bias, interest, motive. Extrinsic evidence of a witness' bias, interest, or motive is not admissible unless, on cross-examination, the matter is brought to the attention of the witness and the witness is afforded an opportunity to explain or deny the matter.

stated above that the Circuit Court's ruling that the extreme prejudicial effect of such evidence would have outweighed the probative value under HRE Rule 403 is equally applicable. The Circuit Court's exclusion of the evidence was not an abuse of discretion.

V.    CONCLUSION

For these reasons, the Circuit Court's June 21, 2017 Judgment is affirmed.

DATED: Honolulu, Hawai'i, October 11, 2018.

On the briefs:

Phyllis J. Hironaka,
Deputy Public Defender,
for Defendant-Appellant.

Sonja P. McCullen,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge